(87 App. Div. 174.)

## SHEEHAN v. STANDARD GASLIGHT CO. OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   October 23, 1903.)

1. INJURY TO EMPLOYÉ—NEGLIGENCE OF EMPLOYÉ.

> One who had for years been employed by defendant to remove covers from a tank, and, after examining the water, to replace them, in putting back a cover, which, when in place, was supported by cleats, stamped on it, tipping it up and throwing him into the tank. He had been warned against stamping on it, no necessity therefor appeared, and there was no danger if he avoided resting his weight on the cover, which danger was as apparent to him as defendant.  *Held*, that his negligence caused the accident, and prevented his recovering.

Appeal from Trial Term, New York County.

Action by Margaret Sheehan, administratrix of Jeremiah Sheehan, deceased, against the Standard Gaslight Company of the City of New York.  From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals.  Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Frederick Hulse, for appellant.
Franklin Pierce, for respondent.

INGRAHAM, J.   The plaintiff's intestate, for seven or eight years prior to November 20, 1898, had been in the employ of the defendant. As a part of its plant, the defendant had, about a year before, constructed a large wooden tank, in which water was collected before it was discharged into the river.  There were four or five openings on the top of this tank, to which there were covers with an iron ring by which to remove them, and when in place these covers were supported by cleats on the inside of the tanks.  It was a part of the plaintiff's intestate's duty to lift these covers and examine the condition of the water in the tanks, to see if it was in condition to be discharged into the river.  This duty the deceased, with other employés, had performed since the tank had been built.  The plaintiff's intestate had been in the habit of lifting up these covers with the iron rings, placing them on one side of the opening, examining the water, and then replacing the covers with his foot, stamping them down in place. There was evidence that this had been done in the presence of the assistant superintendent by the plaintiff's intestate and by other employés of the defendant.  On November 20, 1898, the plaintiff's intestate, with a fellow workman, came into the building in which this tank was located.  This fellow workman, called for the plaintiff, testified that the plaintiff's intestate took off the cover over one of the openings, made the examination, pushed the cover back over the opening with his foot, and stamped on it.  When he did this his companion said to him, "You damned fool, didn't I tell you the other day not to stamp on a cover like that?" to which the plaintiff's intestate replied, "Oh, that is nothing; I am used to this."  He also testified that he had warned the plaintiff's intestate on a previous occasion not to stamp on the covers.  After this warning the deceased

again stamped on the cover, the cover tipped up, and he fell into the tank, sustaining injuries which caused his death.   One witness, who was also in the employ of the defendant, a brother of the plaintiff, testified that after the accident he noticed that the cleats which held this cover were worn, and that a day or two after the accident a carpenter in the employ of defendant had removed these cleats and replaced them by new ones.   This was denied by the carpenter, the superintendent of the defendant, and others, employés, who testified that the cleats had remained in the same condition to the time of the trial.   There is no evidence that this cover had ever fallen before, or that the defendant or its employés had any notice that such an accident was likely to happen, or that the situation was at all dangerous. The assistant superintendent testified that some time prior to the accident he had noticed the deceased attempting to stamp on the cover, and he had told the deceased that that was not the way to replace it, and that since such instruction he had never noticed the deceased, or any other workman, use this method of replacing the cover.

This situation was perfectly apparent:   Whatever danger there was in replacing the cover by this method was as apparent to the deceased, who had been in the employ of the defendant for several years, as it was to the defendant or its superintendent; and these appliances were perfectly safe unless an employé stood upon the covering in such a way that, if it gave way, he would fall into the tank.   While the employer was bound to furnish to his employés a proper and safe place to work, they were not insurers, but were bound only to furnish such appliances as, when used with ordinary care, would be safe.   There was nothing in this situation that would charge the defendant with notice that this tank was unsafe, or that an accident was likely to occur, or that it was an unsafe place for the deceased to work if he used ordinary care.   All that he had to do was to avoid standing on the cover in such a way that, if it gave way or slipped, he would not fall into the tank; and there was nothing in the situation to show that it was necessary for him to stamp on this cover to properly perform the work that he was required to do.   I think, upon the plaintiff's testimony, the cause of the accident was the negligence of the deceased in using this unsafe method of replacing the cover, and that the accident could not be attributed to the negligence of the defendant. When the deceased adopted this method, against which he had been warned, he took upon himself the risk incident to this method of replacing the cover, and the accident resulted solely from his act of stamping on the cover in such a way that, if it slipped and fell into the tank, he would follow; and that for the result of such an act the defendant was not responsible.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.   All concur.